Filed 4/25/22  P. v. Alvarez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAIN ALVAREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B313110<br>(Super. Ct. No. 2020013105)<br>(Ventura County) |

Alain Alvarez appeals the judgment entered after a jury convicted him of inflicting corporal injury on a person with whom he had a dating relationship (Pen. Code,[1] § 273.5, subd. (a)).  The trial court granted appellant's request to reduce the charge to a misdemeanor and placed him on three years of probation with terms and conditions including that he serve 90 days in county jail.  Appellant raises claims of evidentiary, prosecutorial, and cumulative error.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

# STATEMENT OF FACTS
## *Prosecution*

Appellant and A.R. met in January 2020 and began dating. In the early morning hours of May 6, 2020, Ventura County Deputy Sheriff Conrad Meadows and his partner were dispatched to appellant's apartment regarding a noise complaint. The deputies entered the apartment and saw appellant, his mother Columba Ceja, and his sister L., who was 17 at the time of trial. While searching the apartment for other people, Deputy Meadows opened a downstairs bathroom door and saw A.R. inside the bathroom. A.R. had bruises and scratch marks on her chest, her nose was bleeding, and blood was on the bathroom wall.

When asked about her injuries, A.R. said she had been pushed into a wall as she and Ceja attempted to physically restrain appellant, who was highly intoxicated, from leaving the apartment. In phone calls appellant made to A.R. from jail after his arrest, A.R. said "you kinda like uppercutted me" and "got my fuckin' nose and my lip." At trial, A.R. testified that she and appellant had been drinking on the night of the incident and that her injuries were the result of a fall on the stairs outside appellant's apartment as she attempted to help appellant when he stumbled. She denied that appellant had punched her and claimed that her blood somehow ended up on the bathroom wall while she was cleaning her face.

L. testified that she was sleeping upstairs when she heard appellant arguing with A.R. and Ceja. L. went downstairs and saw appellant moving toward the door as if he were about to leave the apartment. L. persuaded appellant to stay and went back upstairs. She subsequently heard a thump and went back

2

downstairs after the deputies arrived.  L. admitted telling one of the deputies that she saw appellant punch A.R. in the face and body and then follow her into the bathroom.[2]  L. claimed that she had lied by saying what she thought the deputy wanted to hear.

### Defense

Ceja testified that on the night of the incident she and A.R. had worked together to calm appellant down and prevent him from leaving the apartment.  Ceja never saw appellant hit or act aggressively toward A.R. that night and she had no idea how A.R.'s blood ended up on the bathroom wall.

Miguel Angel Sanchez-Hernandez lived in appellant's apartment building when the incident took place.  On the night of May 5 Sanchez saw appellant and A.R. together outside on the stairway, heard a scream, and then saw that A.R. had fallen. When Sanchez approached appellant and A.R. and asked them if everything was okay, they both said they had slipped on the stairs and laughed.  Sanchez did not see any bleeding or injury to A.R.'s face.

## DISCUSSION

### A.R.'s Prior Inconsistent Statements

Appellant contends the trial court erred in denying his request to exclude A.R.'s prior inconsistent statements under Evidence Code section 1235.  He asserts that the statements, which were made during phone calls he had with A.R. while he was in jail awaiting trial, should have been excluded as a sanction for delayed discovery because they were not timely produced to appellant in accordance with section 1054.7.  We are not persuaded.

---

[2] Bodycam footage of L.'s statements to the deputies at the scene was played for the jury at trial.

3

The prosecution must disclose to the defense any relevant evidence "if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies." (§ 1054.1.) Such evidence must be produced at least 30 days prior to trial absent good cause for an exception. (§ 1054.7.) If relevant evidence is not timely produced, the trial court may impose any appropriate sanction "including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).)

"Though a trial court has discretion in these matters, that discretion is not unfettered. 'The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted.'" (*People v. Superior Court (Mitchell)* (2010) 184 Cal.App.4th 451, 459, quoting § 1054.5, subd. (c).) This includes "testimony from the People's witnesses regarding discovery not previously provided." (*Ibid.*) We review the trial court's rulings on this issue for an abuse of discretion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1232.)

After his arrest, appellant spent approximately one week in custody. His trial commenced more than two months later. The prosecutor first received the recordings of appellant and A.R.'s three jailhouse calls less than a week prior to trial and immediately produced them to the defense. In those calls, A.R. is heard telling appellant "you kinda like uppercutted me" and "got my fuckin' nose and my lip." The prosecutor explained that he had not considered the possibility of recorded jailhouse calls until

4

he discovered calls that had been made in a different case. Realizing that appellant may have made calls because he was in custody for more than one or two days, the prosecutor made a request for the recordings of any such calls. The request was made on September 21, 2020, the prosecutor received the recordings on September 29, and produced them to the defense the following day.

At the urging of the defense, the court indicated it would exclude the evidence as a sanction for the discovery violation. The court told the prosecutor, however, that "if you think that as the trial progresses there's some event, testimony or otherwise that should cause the Court to re-examine that ruling, I'll certainly entertain it at that time."

After A.R. testified that appellant had not hit her, the prosecutor presented her with a transcribed copy of the phone call to determine if it would refresh her recollection. When asked whether she had told appellant that he "uppercut" her, A.R. replied that she did not recall making the statement and suggested she may have been referring to her fall down the stairs. Following a hearing outside the jury's presence, the court determined that the portion of the call in which A.R. stated that appellant had hit her should be admitted to impeach her testimony at trial. The court made clear, however, that the phone calls were otherwise still subject to exclusion as a sanction for the discovery violation.

The court did not abuse its discretion. The statutory scheme governing discovery in criminal cases is intended "[t]o promote the ascertainment of truth in trials." (§ 1054, subd. (a).) This purpose would not be met if the prosecution was precluded

5

from impeaching A.R. with prior statements that directly contradicted what she testified to at trial.

Moreover, the exclusion of testimony is not a proper sanction for a discovery violation "absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial.  [Citation.]" (*People v. Jordan* (2003) 108 Cal.App.4th 349, 358.)  Appellant makes neither showing here.  It is essentially undisputed that the discovery violation was neither willful nor motivated by a desire to obtain a tactical advantage.  Contrary to appellant's claim, the delayed discovery of the phone calls did not amount to a violation of his constitutional rights because the evidence was not favorable to the defense.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 473.)

The defense also received the discovery a week before A.R. testified, so it had ample opportunity to prepare for the possibility that her prior statements would be admitted against her for purposes of impeachment.  (See *People v. Verdugo* (2010) 50 Cal.4th 263, 283 [defendant failed to demonstrate prejudice where a witness's prior oral statement regarding a threat were disclosed to the defense "nearly [one] week" prior to the witness's testimony because "defense counsel had ample time to prepare a cross-examination of [the witness] on this point" and "[d]efendant does not state specifically what counsel would have done differently if [the witness's] oral statement had been disclosed sooner"].)  Moreover, A.R.'s trial testimony was inherently incredible and her statements to appellant on the phone were essentially corroborated by L.'s statements to the deputies. Because it is not reasonably probable that appellant would have achieved a more favorable result had the challenged evidence been excluded, his claim fails for lack of prejudice.  (*People v.*

6

*Watson* (1956) 46 Cal.2d 818, 836; *Verdugo*, at p. 280 [applying *Watson* harmless error standard to discovery violation under § 1054.1].)

### *Prosecutorial Misconduct*

Appellant contends the prosecutor committed misconduct, in violation of his constitutional rights, by disparaging defense counsel during closing argument.  We disagree.

A claim of prosecutorial misconduct is governed by the abuse of discretion standard of review.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.)  ""'A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel." [Citations.]  "In evaluating a claim of such misconduct, we determine whether the prosecutor's comments were a fair response to defense counsel's remarks" [citation], and whether there is a reasonable likelihood the jury construed the remarks in an objectionable fashion [citation].'  [Citation.]  'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'"  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336-1337.)

"[T]o preserve a claim of prosecutorial misconduct for appeal, ""a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety."'  [Citation.]  The lack of a timely objection and request for admonition will be excused only if either

7

would have been futile or if an admonition would not have cured the harm.'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 942–943.)

In his closing argument, the prosecutor discussed how L.'s trial testimony differed from what she told the deputies at the scene and asked the jury to compare her demeanor in the bodycam video to her demeanor on the stand.  After referring to L.'s testimony that she met with defense counsel prior to her testimony, the prosecutor stated:  "We don't know what they talked about.  But she said they talked for at least 20 minutes.  Can you imagine the stress that girl went through when she has to walk back that statement?"  Defense counsel objected to the remark as "[i]mpugning the integrity of defense counsel" but did not request an admonition.  After the court overruled the objection, the prosecutor added:  "I don't know what [defense counsel] talked to [L.] about, but [L.] had to walk back—she had to explain why . . . what she told the officer . . . was a lie."

In addressing the issue in her closing argument, defense counsel characterized the prosecutor's comments as "unprofessional and really kind of desperate" and added that "for [him] to say that me preparing and interviewing witnesses is unethical or for him to insinuate that is offensive."  On rebuttal, the prosecutor made clear to the jury that he "did not say [defense counsel] did anything unethical" and added "[the] defense has no obligation to produce any evidence, but they did.  You heard from [Ceja].  You heard from [Sanchez].  But we didn't hear the conversation they had with [L.]"

Appellant fails to demonstrate that the prosecutor committed misconduct, much less that the error was prejudicial.  He only raised an objection to the prosecutor's first comment and

did not request any admonitions, so his claim is forfeited. (*People v. Hoyt*, *supra*, 8 Cal.5th at pp. 942–943.)

In any event, the challenged remarks did not amount to misconduct. "'Prosecutors may attack the defense case and argument. "Doing so is proper and is, indeed, the essence of advocacy."'" (*People v. Krebs* (2019) 8 Cal.5th 265, 342.) Even if the prosecutor's comments could be fairly characterized as disparaging, they were less so than those the California Supreme Court has previously upheld. (See, e.g., *People v. Stanley* (2006) 39 Cal.4th 913, 952 [no misconduct where prosecutor argued counsel "'imagined things that go beyond the evidence,'" was on an "'imaginary trip,'" and told the jury a "'bald-faced lie'"]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [no misconduct where prosecutor said counsel can "'twist [and] poke [and] try to draw some speculation, try to get you to buy something'"]; *People v. Gionis* (1995) 9 Cal.4th 1196, 1215-1216 [prosecutor argued that defense counsel was talking out of both sides of his mouth]; *People v. Bell* (1989) 49 Cal.3d 502, 538 [prosecutor argued that defense counsel's job is to "'confuse'" jurors and "'throw sand'" in their eyes and that counsel "'does a good job of it'"].)

Moreover, the prosecutor made clear that the jury should not construe his remarks as disparaging defense counsel and appellant offers nothing to indicate that the jury "'drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Seumanu*, *supra*, 61 Cal.4th at pp. 1336-1337.) In addition, L.'s statements that she saw appellant hit A.R. were corroborated by A.R.'s statements to appellant and L.'s attempts at trial to retract her prior statements were not persuasive. Given the strong evidence of appellant's guilt, any error arising from the prosecutor's

challenged comments was harmless regardless of the standard of review.

### *Cumulative Error*

Appellant contends that the cumulative effect of the alleged errors compels reversal of the judgment. Because we reject each assignment of error, appellant's claim of cumulative error necessarily fails. (*People v. Avila* (2006) 38 Cal.4th 491, 608.)

### **DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

10

David R. Worley, Judge
Superior Court County of Ventura
_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.